UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

PAMELA GREITZER, ED FEINBERG,                    CASE NO.
FRANK BRADY, MACK SCHLAFFER,
BOB MARZULLI, REBECCA HELMAN,
HELEN MANASSE

                PLAINTIFFS                    COMPLAINT

     -against-

THE CITY OF NEW YORK, THE NEW                    TRIAL BY JURY REQUESTED
YORK CITY DEPARTMENT OF
TRANSPORTATION, AND MIKE
FLYNN, AS COMMISSIONER OF THE
NEW YORK CITY DEPARTMENT OF
TRANSPORTATION,

              DEFENDANTS

_____

     Plaintiffs, Pamela Greitzer, Ed Feinberg, Frank Brady, Mack Schlaffer, Bob Marzulli,

Rebecca Helman, and Helen Manasse, by their attorneys, Bernstein Cherney LLP, for their

Complaint herein, allege as follows:

### INTRODUCTION

     1.     Plaintiffs bring this action in response to efforts by The City of New York (the

"City") and The New York City Department of Transportation ("DOT") to reconfigure West 72nd

Street in Manhattan ("West 72nd Street"), from Central Park West to Riverside Drive, by reducing

the vehicular traffic lanes from two lanes in each direction, to one lane in each direction; creating

a pair of bidirectional "bike" lanes, for the exclusive use of e-vehicles (i.e. e-bikes, e-scooters,

mopeds, motor bikes) and bicycles, side-by-side next to the curb on the north side of West 72nd

Street; relocating parking away from the northside curb to the far side of the micromobility lanes;

1

altering street crossings; and such other activities as are associated with such re-configuration (the "West 72nd Street Plan"). (A copy of the West 72nd Street Plan is annexed hereto as Exhibit "A").

2.      This civil rights case, brought by disabled residents of West 72nd Street, challenges the West 72nd Street Plan, and asserts that it unlawfully discriminates against them as disabled individuals because it bars them from and impairs their access to West 72nd Street and all streets that intersect with West 72nd Street; restricts their access to vehicular transportation; and subjects them to danger and potential injury in violation of Title II of the Americans with Disabilities Act (the "ADA"), the Rehabilitation Act, 42 U.S.C. §1983 (the "Rehabilitation Act"), the New York State Human Rights Law, the New York City Human Rights Law, and violates their rights to due process under the Fifth and Fourteenth Amendments to the United States Constitution.

3.      The West 72nd Street Plan is the latest phase of Defendants' ill-conceived "NYC Street Plan," which requires the construction of at least fifty miles of protected bicycle lanes in the five boroughs, each year through 2026, and threatens an extension beyond that period, but fails to provide parameters and standards that are necessary to protect the rights of disabled individuals, among others. A better crafted plan would have devised designs that accommodated cyclists while giving due consideration to other members of the citizenry.

4.      That goal is fueled, in substantial part, by special interest groups affiliated with cyclists, such as the well-funded "non-profit" Transportation Alternatives, and online publications that routinely distort the benefits of the "protected" bike lanes, populate local community boards, lambast and boycott opponents, and brazenly ignore the rights of the disabled.

5.      DOT's design for the reconfiguration of West 72nd Street places bidirectional bicycle/e-vehicle lanes next to the north sidewalk, displaces parking, and deprives disabled persons (and all other individuals, including senior citizens and children) of the ability to safely access

vehicles – including ambulettes, ambulances, private car services, taxis and buses – or to simply cross the street. Deprived of safe access to and from these vehicles, Plaintiffs, and all similarly situated individuals with disabilities, will be subject to hazards and struggle to go to work, to doctors, to shop, socialize, and engage in routine activities on an equal basis with non-disabled people.

6. The DOT's proposed design would create barriers to protect the cyclists from motor vehicles, but nothing to shield pedestrians from the bikes; in fact, it would remove the barrier (parked cars) that currently exists to protect pedestrians from harm.

7. This is not a choice between accessibility and bicycle lanes. These disability barriers result from DOT's systemic refusal and failure to adopt available, well-known, accessible designs for on-street parking and curb access—including practical alternative solutions for bicycle lanes. While it is well established that these actions violate disability discrimination laws, DOT has rebuffed community requests to consider disability accessibility in its design for West 72nd Street or alternative paths for cyclists.

8. The ADA, Rehabilitation Act and New York State and City human rights statutes have been crafted to protect persons with disabilities from circumstances that limit their ability to partake in ordinary activities on the same or similar basis as non-disabled individuals. Those individuals, a group that includes these Plaintiffs, require, and are entitled to, unimpeded access to streets, vehicles and sidewalks on an equal basis with citizens that have no disabilities.

9. The dangers to disabled people are exacerbated by the proliferation of e-bikes, e-scooters, motor bikes, mopeds, and other e-vehicles and devices that will utilize West 72nd Street's protected bicycle lanes. Speeding along curbside, these vehicles pose an additional obstacle and safety hazard for Plaintiffs, and frankly, for everyone.

10. Because of these dangers, the West 72nd Street Plan will have a chilling effect on Plaintiffs making them virtual shut-ins.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over the claims under 28 U.S.C. §§ 1331 and 1343(a)(3) and (4). This action arises under Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12132 et seq. (the "ADA"), §504 of the Rehabilitation Act, 29 U.S.C. § 794(a)(2), the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution.

12. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over plaintiffs' claims under the New York State Constitution and state and local laws prohibiting disability discrimination.

13. Venue properly lies in this district pursuant to 28 U.S.C. § 1391(b)(1) and (2).

## <u>PARTIES</u>

<u>Plaintiffs</u>

14. Pamela Greitzer lives on West 72nd Street in New York City. She is an individual with a disability.

15. Ed Feinberg lives on West 72nd Street in New York City. He is an individual with a disability.

16. Frank Brady lives on West 72nd Street in New York City. He is an individual with a disability.

17. Rebecca Helman lives on West 72nd Street in New York City. She is an individual with a disability.

18. Mack Schlaffer lives on West 72nd Street in New York City. He is an individual with a disability.

19.     Bob Marzulli lives on West 72nd Street in New York City. He is an individual with a disability.

20.     Helen Manasse lives on West 72nd Street in New York City. She is an individual with a disability.

Defendants

21.     The City is a municipality incorporated under the laws of the State of New York.

22.     DOT is an agency of the City, charged with maintenance and management of City streets, roadways, and bridges.

23.     Respondent Mike Flynn is, and has at all relevant times been, Commissioner of the DOT.

**FACTUAL BACKGROUND**

Facts Relevant to Individual Plaintiffs

Pamela Greitzer

24.     Pamela Greitzer is a Julliard-trained cellist and educator, whose career has included top-tier performances, including as a member of the New York Pops and the Stamford Symphony Orchestra.  In July 2024, as she left rehearsal at Lincoln Center she was struck by an electronic moped, operating unlawfully, thrown in the air, and left bleeding and unconscious on the pavement.

25.     Ms. Greitzer suffered traumatic brain injury and a brain bleed as the result of the collision, and, as a consequence, the right side of her body was paralyzed. She no longer can play the Cello, walks with a cane, and requires a brace to stabilize her right foot.

Rebecca Helman

26.     Rebecca Helman is blind. She can see light only. She suffers from stargardts, a rare, inherited disease that causes progressive central vision loss, usually beginning in children or young

adults. Stargardts affects one in 10,000 people, approximately 5% of whose vision continues to deteriorate.

27.    Dr. Helman, who walks with a cane and travels by taxi or Uber, feels generally unsafe when she needs to cross bike lanes to reach the sidewalk or enter a building since she is unable to see whether bicycles are approaching and determine whether it is safe to open her taxi/Uber door, exit the vehicle, and walk to the curb. She encounters the same issues when leaving a building and must cross a bike lane to reach her transport.

Bob Marzulli

28.    Bob Marzulli has Multiple Sclerosis, which seriously impairs his mobility. As a result, he requires a cane and foot brace when walking and is reliant on taxis and car services and occasionally uses buses, which allow for easy access at curbside.

29.    Because of his limited mobility, Mr. Marzulli proceeds slowly to and from vehicles, which poses additional risks if he is required to cross any e-vehicle lane. These risks increase by several orders of magnitude if he is forced to navigate *two* adjacent bike lanes with speeding e-vehicles going in opposite directions.

Ed Feinberg

30.    Ed Feinberg is 80 years old, has limited mobility, and uses a scooter. He suffered injuries to his back and hip when hit by a golf cart and can no longer walk more than 100 feet without extreme back  pain.  He requires a 4 wheel handicapped scooter wherever he goes and therefore needs access to wheelchair accessible vehicles.

Frank Brady

31.    Frank Brady, who is ninety two years old, has partial mobility issues which limit his ability to reach transportation.

Mack Schlaffer

32.     Mack Schlaffer has mobility issues and requires a walker, which requires him to move slowly and carefully. Having to cross any bike/e-bike/moped lane just to get into a car for a doctor's appointment, or to board a City bus, would be extremely difficult, if not impossible, would pose a danger to his health and safety, and would certainly impair his ability to simply get around. These risks increase significantly if he is forced to navigate *two* adjacent bike lanes going in *opposite* directions.

Helen Manasse

33.     Helen Manasse is 94 years old, has suffered from Parkinsons Disease for ten years, and is wheelchair bound. She can no longer walk, requires a wheelchair at all times, and is accompanied by an assistant. She travels to medical appointments, shopping and other excursions by wheelchair accessible taxis and Ubers and requires assistance to enter and exit the vehicles from and to her wheelchair.

The 72nd Street Plan

34.     West 72nd Street, which stretches from Central Park West to Riverside Drive, is home to approximately 20,000 New Yorkers, the site of hundreds of thriving local businesses, and the location of busy subway stations located at the Broadway and Central Park West intersections.

35.     As historically configured, West 72nd Street is a two way street, with two lanes in each direction and parking adjacent to each curb.

36.     DOT controls and maintains New York City streets and is charged with providing motor vehicle and bicycle travel lanes, on-street parking, bus stops, and crosswalks – all in a manner that is supposed to promote safety and protect the public.

37. Regrettably, here, Defendants have elected to sacrifice safety by creating a thoroughfare for e-vehicle riders along West 72nd Street, with plans to expand that cycling superhighway from the East River to the Hudson.

38. DOT's West 72nd Street Plan would reduce traffic to one lane in each direction; reduce the parking lane on the south side of the street from ten feet to eight feet; create two bidirectional bike/e-vehicle lanes (with barriers to protect the cyclists from motor vehicles, but nothing to shield pedestrians from the bikes) alongside the north side curb - permitting bicycles, e-vehicles, and mopeds to travel, side by side, in opposite directions; create a narrow three foot wide "buffer" on the south side of the bike lanes; and establish an eight foot wide parking lane between the "buffer" lane and the remaining westbound traffic lane. (See Exhibit "A").

39. The West 72nd Street Plan has been designed by DOT to advance Defendants' aggressive mission to comply with the "NYC Street Plan," by constructing at least fifty miles of "protected" bicycle lanes per year through 2026 – without establishing reasonable parameters for the placement of those lanes or consideration for the impact of those lanes on other members of each affected community including, in particular, disabled persons who will be adversely affected by the new configuration.

40. DOT's presentation of the West 72nd Street Plan consists of a series of cartoonish illustrations, which are not drawn to scale, are not supported by engineering or architectural renderings of the proposed redesign of each street along West 72nd Street and fail to accurately reflect the situation "on the ground."

41. For example, DOT's schematic stick drawings include captions that, deceptively, state that the West 72nd Street Plan provides **curbside parking** on the north side of West 72nd Street. (A copy of DOT's parking schematic is annexed hereto as Exhibit "B").

42. In reality, there is no curbside parking; the area falsely referred to as **curbside parking** actually depicts parking in the newly relocated north side parking lane - twelve feet from the curb, beyond the protected bike lanes.

43. The West 72nd Street Plan, by its own terms, is designed principally to accommodate cyclists, including those riding pedal bikes, e-bikes, mopeds, motor bikes, and other e-vehicles.

44. Plaintiffs suffer from disabilities which impair their mobility, strength, and endurance and are reliant upon automobiles and other vehicles to shop for groceries, go to medical appointments, commute to business, and generally live their lives independently.

45. The West 72nd Street Plan significantly and detrimentally harms the disabled by severely limiting their entry and egress to and from their residences and businesses they patronize, hampering their ability to access taxis, ride-sharing transportation (such as Uber and Lyft) and Paratransit services (such as Access-A-Ride), impeding access to emergency services, restricting their ability to go to and from medical appointments, and interfering with their ability to obtain essential services.

46. Bicycles, and particularly e-bikes and other e-vehicles are a source of critical injuries to disabled individuals.

47. Disabled individuals will be endangered, and subject to injury, every single time they simply try to leave their homes and head to a taxi, car or bus for a doctor's appointment, or to visit family.  Each such attempt will require them to endure crossing two lanes of speeding e-bikes and other vehicles, going in opposing directions to reach those vehicles or upon exiting them when returning home. They will endure this dangerous and nerve-rattling ordeal every single time

they wish to simply leave West 72nd Street, for work, for medical appointments, or to visit family and attempt to live their lives in safety and dignity.

48. Disabled individuals will be endangered, and subject to injury, when required to cross two bidirectional bicycle/e-vehicle lanes to reach buses, taxis, ride-share, ambulettes, or Access-A-Ride services, or to access the north side of West 72nd Street when exiting those vehicles.

49. Disabled persons using wheelchairs, scooters, or walkers would be required to load and unload those assistive devices in an active traffic lane when entering and exiting a vehicle.

50. Wheelchair and scooter users requiring ramps to travel from curbside to a vehicle would be required to place those ramps across the bidirectional bike lanes, obstructing cyclists and inviting accidents.

51. DOT's proposal for "Bus Islands" would only exacerbate safety concerns; disabled individuals would be left without sufficient space to maneuver while avoiding speeding bikes and e-vehicles, while ramps needed for entry and exit to buses would abut or cross the bike/e-bike lanes, leaving disabled individuals vulnerable to accidents and injury.

52. Disabled individuals will be endangered, and subject to injury, when required to cross two bidirectional bicycle lanes to reach the south side of West 72nd Street.

53. DOT's solution offers no relief to the disabled; DOT has proposed to create loading zones in the relocated parking lane, where vehicles can park while making deliveries, or while picking up or dropping off passengers. Disabled persons would still be required to cross two bidirectional bike lanes to reach those loading zones.

54. Disabled individuals requiring emergency services also will be adversely affected.

55. Time is of the essence for emergency service responders; reduction of vehicle lanes will inevitably lead to congestion, including from double parked cars blocking the westbound lane,

slowing response times and endangering those individuals awaiting ambulances, firefighters or police.

56.     As a report from the New York State Senate pointed out, as of 2024, "NYC led the world's cities in traffic congestion…The most obvious way gridlock can affect our health is by increasing emergency response times to **health emergencies**, **fires**, and **crimes**….Response times for all three indicators have risen significantly over the past decade." Indeed, travel times have increased in each emergency response category. (A copy of a New York State Senate report on Emergency Service Response times (the "Senate Report") is annexed hereto as Exhibit "C").

57.     The consequences of delay can be catastrophic: for example, as the Senate Report noted, "[m]edical professionals will tell you, to no one's surprise, there is a direct relationship between response time and outcomes including survival. For example, for every minute of delay in a stroke patient nearly 2 million brain cells die which can result in severe disabilities, such as loss of speech, paralysis, or even death."

58.     The dangers are tangible and documented "Micromobility-related trauma is an increasingly significant contributor to urban neurosurgical and trauma system burden….Pedestrians represented the highest-risk subgroup in our cohort. Compared with riders, they were older and more often female, and had greater comorbidity burden… Injury severity was greater when pedestrians were struck by electric devices…These events frequently occurred during evening hours, highlighting a distinct high-risk subgroup within urban micromobility trauma." *The Fast and the Fragile: Neurosurgical Trauma in the Age of Micromobility,* Neurosurgery 98:974–983, 2026 (A copy of which is annexed hereto as Exhibit "D").

59.     As provided on the DOT website, "NYC DOT's policy is to comply with all applicable laws, including but not limited to, the Americans with Disabilities Act (ADA) and the Rehabilitation Act."

60.     Despite that hollow proclamation, DOT's West 72nd Street Plan does not comply with either the ADA or the Rehabilitation Act.

61.     The West 72nd Street Plan, as implemented, violates both the ADA and the Rehabilitation Act by unlawfully restricting the ability of disabled individuals to depart and return to streets where they reside, access transportation, reach businesses, medical offices and facilities, and other places necessary for their independent daily living.

62.     As provided at 28 C.F.R. § 35.151(b)(1):

> Each facility or part of a facility altered by, on behalf of, or for the use of a public entity in a manner that affects or could affect the usability of the facility or part of the facility shall, to the maximum extent feasible, be altered in such manner that the altered portion of the facility is readily accessible to and usable by individuals with disabilities, if the alteration was commenced after January 26, 1992

63.     Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132.

64.     The Rehabilitation Act similarly provides that "No otherwise qualified individual with handicaps in the United States … shall, solely by reason of his or her handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." § 29 U.S.C. § 794(a).

65.    As set forth Plaintiffs are each "qualified individuals" within the meaning of the ADA and the Rehabilitation Act.

66.    Defendants are subject to the ADA because the City and DOT each received federal funds, including in connection with transportation and the City's "Vision Zero" initiative.

67.    Defendants are subject to the Rehabilitation Act because the City and DOT each receive federal funds, including in connection with transportation and the City's "Vision Zero" initiative.

68.    Upon information and belief, prior to the implementation of the West 72nd Street Plan, DOT failed to do an environmental impact study or traffic study.

69.    Upon information and belief, DOT has not obtained an independent study of traffic on West 72nd Street.

70.    Upon information and belief, neither the City nor DOT has adequately assessed the conditions potentially created (or the impact upon the disabled) from the introduction of two bidirectional bicycle/e-vehicle lanes adjacent to the curb and blocking access to vehicles and parking.

71.    Upon information and belief, DOT's West 72nd Street Plan relies upon self-serving studies conducted by City agencies.

72.    In  order to claim that it had obtained community validation for the West 72nd Street Plan, DOT submitted the plan to a meeting of Manhattan Community Board 7 on June 3, 2026.

73.    Despite vigorous opposition, Manhattan Community Board 7 approved the West 72nd Steet Plan, by the narrow margin of 26-19-1.

74.    Upon information and belief, seven new members were admitted to Community Board 7 shortly before the meeting.

75.    Upon information and belief, all, or virtually all of the newly admitted members voted to approve the West 72nd Street Plan, providing the votes necessary for approval.

76.    Although members of the West 72nd Street community have expressed opposition to the plan, their concerns have been disregarded by Defendants.

77.    For all the foregoing reasons, DOT's West 72nd Street Plan is arbitrary and capricious and has denied Plaintiffs and others similarly situated their rights to due process.

78.    Upon information and belief, safety under the West 72nd Street Plan will be delegated to volunteers, including representatives of bicycle lobbyists and community activists who favored implementation of the plan and have routinely ignored its impact on the disabled.

79.    Plaintiffs have been denied the opportunity to participate in or benefit from the City's services, programs, or activities related to the provision of public streets and sidewalks or have otherwise been discriminated against by Defendants because of Plaintiffs' disabilities.

## FIRST CAUSE OF ACTION

### VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT
### 42 U.S.C. § 12132

80.    Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 79 as if fully set forth herein.

81.    Pursuant to the ADA "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

82.    As set forth above, Plaintiffs are qualified individuals with disabilities.

83.    The ADA provides further that "[t]he remedies, procedures, and rights set forth in section 794 of Title 29 shall be the remedies, procedures, and rights this subchapter provides to

14

any person alleging discrimination on the basis of disability in violations of section 12132 of this title." 42 US Code § 12133.

84.    Title 29 Section 794 - the Rehabilitation Act - provides, in pertinent part, "[n]o otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program …"

85.    Defendants plan will discriminate against the Plaintiffs by denying them full access to West 72nd Street, parking, transport, and by failing to make its facilities and services readily accessible as required by 42 U.S.C. § 12132 and its implementing regulations at 28 C.F.R. Part 35.

86.    Defendants are subject to the ADA because the City is a municipality providing public services, and the remaining Defendants have been delegated the power to administer those services and actually do administer those services.

87.    Defendants, through their staff and/or employees, knew or should have known of their obligations under Title II of the ADA to provide accommodations to individuals with disabilities, including individuals who have mobility disabilities, and to engage in practices to promote compliance with these statutes.

88.    Defendants, through their staff and/or employees, knew or should have known that the redesign of West 72nd Street created an unreasonable risk of causing Plaintiffs greater levels of isolation, segregation, frustration, and denial of their civil rights than a non-disabled person would be expected to experience.

15

89.    Plaintiffs have been denied the opportunity to participate in and benefit from the services of City and DOT programs or activities related to the provision of streets and sidewalks as a result of the West 72nd Street Plan and its administration by Defendants, as set forth above.

90.    Defendants plan fails to reasonably accommodate Plaintiffs, by failing to ensure that the West 72nd Street reconfiguration is compliant with the ADA.

91.    By virtue of the foregoing, Defendants' plan to redesign West 72nd Street discriminates against Plaintiffs in violation of the ADA.

92.    Plaintiffs will suffer irreparable harm as a result of Defendants' violations of the ADA.

93.    The harm sustained by Plaintiffs is the expected and foreseeable consequence of Defendants' failure to comply with the requirements and mandates of Title II of the ADA.

94.    Plaintiffs will continue to suffer such discrimination, injury, and damage without the immediate relief provided by the ADA as requested herein.

95.    Pursuant to the ADA, Plaintiffs are entitled to injunctive relief and reasonable attorney's fees.

<u>**SECOND CAUSE OF ACTION**</u>

**VIOLATION OF THE REHABILITATION ACT, 29 U.S.C. § 794 ET SEQ.**

96.    Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 95 as if fully set forth herein.

97.    Plaintiffs are qualified individuals with disabilities, as set forth above.

98.    Upon information and belief, the City and DOT are recipients of federal funds and are therefore subject to the Rehabilitation Act.

99.     As set forth above, Plaintiffs will be denied access to city streets, sidewalks, and curb cuts, solely by reason of their disabilities.

100.    As set forth herein, Defendants' plan violates the Rehabilitation Act by excluding the Plaintiffs, solely because of their disabilities, from participation in, and denying them the benefits associated with their residence on West 72nd Street and their ability to access vehicles, emergency services and safely navigate, depart from and return to West 72nd Street and its cross-streets.

101.    Defendants, through their staff and/or employees, knew or should have known of their obligations under the Rehabilitation Act to provide accommodations to individuals with disabilities, including individuals with mobility-related disabilities, and to engage in practices to promote compliance with the Rehabilitation Act.

102.    Defendants, through their staff and/or employees, knew or should have known that their policies and practices created an unreasonable risk of causing Plaintiffs and others with disabilities greater levels of isolation, segregation, frustration, and denial of their civil rights than a non-disabled person would be expected to experience.

103.    The harm sustained by Plaintiffs herein is the expected and foreseeable consequence of the Defendants' failure to comply with the requirements and mandates of the Rehabilitation Act.

104. Plaintiffs are entitled to recover reasonable attorneys' fees, costs, and litigation expenses from Defendants pursuant to 29 U.S.C. § 794a (b).

105. Pursuant to 29 U.S.C. § 794(a) Plaintiffs are entitled to injunctive relief.

### THIRD CAUSE OF ACTION AGAINST THE CITY AND DOT

### VIOLATION OF 42 U.S.C. § 1983

106.    Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 105 as if fully set forth herein.

107.    The West 72nd Street Plan will be enacted, implemented, and administered under color of New York State municipal law.

108.    The West 72nd Street Plan will deprive Plaintiffs of their rights under federal statutes, including, without limitation, the ADA and the Rehabilitation Act.

109.    Defendants' actions in designing and implementing the West 72nd Street Plan were intentional and showed callous disregard for Plaintiffs' rights.

110.    Plaintiffs are entitled to recover attorney's fees.

### FOURTH CAUSE OF ACTION

### VIOLATION OF NEW YORK STATE HUMAN RIGHTS LAW, EXECUTIVE LAW §296(2)(A)
.

111.    Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 110 as if fully set forth herein.

112.    The New York State Human Rights Law, Executive Law §296(2)(a) provides, in pertinent part:

> (a) It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, resort or amusement, because of the race, creed, color, national origin, citizenship or immigration status, sexual orientation, gender identity or expression, military status, sex, disability, marital status, or status as a victim of domestic violence, of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or

privileges thereof … or that the patronage or custom threat of any person of or purporting to be of any particular race, creed, color, national origin, citizenship or immigration status, sexual orientation, gender identity or expression, military status, sex or marital status, or having a disability is unwelcome, objectionable or not acceptable, desired or solicited.

113.    The New York State Human Rights Law, Executive Law §296(2)(a) provides further:

(c) For the purposes of paragraph (a) of this subdivision, "discriminatory practice" includes:

(i) a refusal to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities, unless such person can demonstrate that making such modifications would fundamentally alter the nature of such facilities, privileges, advantages or accommodations;

(ii) a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden

114.    Upon information and belief, Defendants have functioned as the owner (and the agents of the owner) of public accommodations and have, in that capacity, committed unlawful discriminatory practices when they refused, withheld from, or denied Plaintiffs the accommodations, advantages, facilities or privileges thereof on account of Plaintiffs' disabilities.

115.    The West 72nd Street Plan violates New York State Human Rights Law by discriminating against Plaintiffs and other disabled persons.

19

116. Implementation of the West 72nd Street Plan constitutes a willful violation of New York State's Human Rights Law.

117. Plaintiffs each are entitled to damages of at least $100,000, an injunction requiring Defendants to cease implementation of the West 72nd Street Plan and return West 72nd Street to its previous formation, and such other relief as the Court may award.

## FIFTH CAUSE OF ACTION

### VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW
### NYC ADMIN. CODE, §§ 8-101 ET SEQ.

118. Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 117 as if fully set forth herein.

119. Title 8 of the New York City Administrative Code prohibits discrimination based upon disability.

120. By virtue of the foregoing, Defendants will have discriminated against Plaintiffs based upon their disabilities.

121. Defendants have functioned as the provider (and the agents of the provider) of public accommodations and have, in that capacity, refused to provide and pay for reasonable accommodations to allow Plaintiffs, who are disabled individuals, to access those public accommodations.

122. Plaintiffs are each entitled to damages in an amount of $125,000, such other relief as the finder of fact may award, and injunctive relief requiring Defendants to cease implementation of the West 72nd Street Plan and return West 72nd Street to its previous formation.

## SIXTH CAUSE OF ACTION

### VIOLATION OF DUE PROCESS CLAUSE – 14th AMENDMENT

123.    Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 122 as if fully set forth herein.

124.    At all times relevant herein, Defendants were acting under color of statutes, ordinances, regulations, customs, or usage of the State of New York and the City

125.    Defendants are violating the rights of Plaintiffs guaranteed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which is actionable pursuant to 42 U.S.C. § 1983, by (i) by failing or refusing to provide Plaintiffs and other disabled persons a meaningful opportunity to be heard regarding the decision to implement the West 72nd Street Plan; (ii) by subjecting Plaintiffs to a scheme and process that without consideration of legally required factors, specifically those concerning prevailing laws protecting individuals with disabilities; and (iii) by relying upon the flawed and questionable imprimatur of Manhattan Community Board 7.

## SEVENTH CAUSE OF ACTION

### VIOLATION OF NEW YORK STATE CONSTITUTION – DUE PROCESS

126.    Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 125 as if fully set forth herein.

127.    Defendants are violating the rights of Plaintiffs guaranteed by guaranteed by Article I, § 6 of the New York State Constitution, by (i) by failing or refusing to provide Plaintiffs and other disabled persons a meaningful opportunity to be heard regarding the decision to implement the West 72nd Street Plan; (ii) by subjecting Plaintiffs to a scheme and process that without consideration of legally required factors, specifically those concerning prevailing laws protecting

21

individuals with disabilities; and (iii) by relying upon the flawed and questionable imprimatur of Manhattan Community Board 7.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiffs request that this Court enter a judgment against Defendants and in favor of Plaintiffs and award the following relief:

(i) On the First Cause of Action, preliminarily and permanently enjoining Defendants from implementing the West 72nd Street Plan; requiring Defendants to restore west 72nd Street to its condition prior to implementation of the West 72nd Street Plan; and awarding Plaintiffs' attorneys fees and costs and such additional relief as the Court deems appropriate.

(ii) On the Second Cause of Action, preliminarily and permanently enjoining Defendants from implementing the West 72nd Street Plan; requiring Defendants to restore west 72nd Street to its condition prior to implementation of the West 72nd Street Plan; and awarding Plaintiffs' attorneys fees and costs and such additional relief as the Court deems appropriate.

(iii) On the Third Cause of Action, preliminarily and permanently enjoining Defendants from implementing the West 72nd Street Plan; requiring Defendants to restore west 72nd Street to its condition prior to implementation of the West 72nd Street Plan; and awarding Plaintiffs' attorneys fees and costs and such additional relief as the Court deems appropriate.

(iv) On the Fourth Cause of Action, awarding Plaintiffs damages in an amount of at least $100,000 each; preliminarily and permanently enjoining Defendants from implementing the West 72nd Street Plan; requiring Defendants to restore West 72nd Street to its condition prior to implementation of the West 72nd Street Plan; and awarding Plaintiffs' attorneys fees and costs and such additional relief as the Court deems appropriate.

(v) On the Fifth Cause of Action, awarding Plaintiffs damages in an amount of at least $125,000 each; preliminarily and permanently enjoining Defendants from implementing the West 72nd Street Plan; requiring Defendants to restore west 72nd Street to its condition prior to implementation of the West 72nd Street Plan; and awarding Plaintiffs' attorneys fees and costs and such additional relief as the Court deems appropriate.

(vi) on the Sixth Cause of Action, adjudging and declaring that the West 762nd Street Plan violates Plaintiffs' rights under the Due Process Clause of the United States Constitution;

(vii) on the Seventh Cause of Action, adjudging and declaring that the West 72nd Street Plan violates Plaintiffs' rights under the Due Process Clause of the New York State Constitution.

(viii) Awarding Plaintiffs, pursuant to 29 U.S.C. § 794(b), 42 U.S.C. § 1988, and 42 U.S.C. § 12205, the costs of this suit and reasonable attorneys' fees and litigation expenses.

(ix) Granting Plaintiffs such other, further and different relief as the nature of the case may require or as may be determined to be just, equitable and proper by this Court.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all issues triable as of right by a jury

Dated: New York, N.Y.
      July 9, 2026

                                        BERNSTEIN CHERNEY LLP

                                        By: /s/ Hartley T. Bernstein
                                        955 Park Avenue, Fifth Floor West
                                        New York, N.Y. 10028
                                        Telephone: (212) 381-9684
                                        Fax: (646) 304-95-35
                                        hbernstein@bernsteincherney.com

                                        *Attorneys for Plaintiffs*

23